Barry D. DEITCH, Plaintiff,

v.

M. S. BLISS, Deputy Director, United
States Naval Investigative
Service, Defendant.

No. 81–0007–CIV–4.

United States District Court,
E. D. North Carolina,
New Bern Division.

March 9, 1981.

Herman E. Gaskins, Jr., Washington, N. C., for plaintiff.

James L. Blackburn, U. S. Atty. by Abraham Penn Jones, Asst. U. S. Atty., Raleigh, N. C., Robert A. Reutershan, Trial Atty., Litigation Division, Dept. of the Navy, Washington, D. C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER

LARKINS, Senior District Judge.

This matter came on to be heard before the Court at 10:30 a. m. on March 2, 1981 in chambers at Trenton, North Carolina upon defendant's motions to dismiss plaintiff's application for a preliminary injunction, to strike portions of plaintiff's complaint, and to quash the subpoena served by plaintiff upon Warren R. Shadko. Upon consideration of the entire record in this matter and after argument by counsel, the Court, pursuant to Rule 52(a), Federal Rules of Civil Procedure, makes the following Findings of Fact and Conclusions of Law and enters the following Order:

## FINDINGS OF FACT

1. Plaintiff is now a Senior Special Agent in the Naval Investigative Service (NIS) stationed at Camp Lejune, North Carolina.

2. On or about December 1, 1980, plaintiff voluntarily requested that he be assigned to a post of duty other than Camp Lejune, North Carolina.

3. On December 3, 1980, plaintiff was advised that NIS had granted his request for a transfer and he was directed to report for duty at Whidby Island, Washington, no later than February 15, 1981.

4. By a memorandum dated December 29, 1980, and received by plaintiff on December 31, 1980, plaintiff was served with a notice signed by defendant proposing plaintiff's demotion from Senior Special Agent, GS–12, to Special Agent, GS–11, for his admitted use and possession of marijuana. Plaintiff was allowed 15 days to respond to the proposal that he be downgraded.

5. In a memorandum from plaintiff to defendant dated January 5, 1981, plaintiff requested an additional 30 days to respond to the proposal that he be downgraded. In a January 6, 1981, memorandum from defendant to plaintiff, the request for additional time was granted and plaintiff was given until February 14, 1981, to respond to the downgrading proposal.

6. In a memorandum dated January 20, 1981, plaintiff advised defendant that he had retained counsel and requested that his transfer be held in abeyance until plaintiff had exhausted the administrative and judicial remedies available to him to contest the proposed downgrading. That request was denied in a memorandum from defendant to plaintiff dated January 23, 1981.

7. On February 6, 1981, plaintiff filed this action, seeking a temporary restraining order prohibiting the effectuation of plaintiff's transfer and a preliminary injunction restraining the transfer.

8. On February 10, 1981, after agreement by the parties to the entry of a temporary restraining Order, a Consent Order restraining the transfer for 10 days was entered by the Court. The temporary restraining order was continued until March 2, 1981, with the consent of the parties.

## CONCLUSIONS OF LAW

1. This action is subject to the provisions of the Civil Service Reform Act of 1978, Pub.L.No. 95–454, 92 Stat. 1111 (October 13, 1978) (CSRA), effective on January 11, 1979. CSRA § 907.

2. The CSRA is a comprehensive statute that provides the exclusive bases upon which federal employees may seek review of and redress for actions taken that affect their status as federal employees. S.Rep. No.95–969, 95th Cong., 2d Sess. (1978);

H.R.Rep.No.95–1403, 95th Cong., 2d Sess. (1978), U.S.Code Cong. & Admin.News 1978, p. 2723.

■ 3. The CSRA provides that the Special Counsel of the Merit Systems Protection Board (MSPB) may seek a stay of personnel actions, such as transfers, before the MSPB if the Special Counsel has "reasonable grounds to believe that [a] personnel action . . . is to be taken, as a result of a prohibited personnel practice." 5 U.S.C. § 1208(a) (Supp. II 1978). The CSRA makes no provision for a stay of a personnel action where there is no allegation of a prohibited personnel practice or other than through the Special Counsel, and makes no provision for judicial review of the Special Counsel's decision not seek a stay from the MSPB. The CSRA's grant of authority to the MSPB to issue stays of personnel actions under specific circumstances, together with the comprehensive nature of the CSRA, indicate that Congress contemplated that the stay authority granted to the MSPB would be exclusive. Therefore, this Court has no jurisdiction to hear plaintiff's complaint for a preliminary injunction. Cf. *Brown v. General Services Administration*, 425 U.S. 820, 829–835, 96 S.Ct. 1961, 1966–1969, 48 L.Ed.2d 402 (1976) (The Civil Rights Act of 1964, as amended, provides a comprehensive scheme for federal employees seeking redress for discriminatory actions taken against them and provides the exclusive remedy for employment discrimination actions against federal agencies).

■ 4. Furthermore, even if the CSRA does not provide plaintiff the exclusive bases upon which he may seek a stay of his transfer, this Court finds that the traditional bases for this Court to enter injunctive relief, the All Writs Act, 28 U.S.C. § 1651(a), and the general authority of courts charged with review of agency decisions to issue writs in aid of their jurisdiction, see *Sampson v. Murray*, 415 U.S. 61, 73–74, 94 S.Ct. 937, 944–945, 39 L.Ed.2d 166 (1974), are not available here.

■ 5. Should NIS determine that it is appropriate for plaintiff to be downgraded, plaintiff will be entitled to appeal that decision to MSPB. 5 U.S.C. § 7513(d) (Supp. II 1978). If MSPB upholds any decision by NIS downgrading plaintiff, he may appeal that decision to a United States Court of Appeals or the United States Court of Claims. 5 U.S.C. § 7703 (Supp. II 1978). The CSRA does not provide for district court review of MSPB decisions. A court has authority to grant temporary relief, such as that requested by plaintiff, only "in aid of [the court's] jurisdiction." *Sampson*, 415 U.S. at 73–74, 94 S.Ct. at 944–945. This Court has no jurisdiction to review plaintiff's downgrade and, therefore, has no jurisdiction in aid of which it may issue the requested writ.

■ 6. Even if this Court had jurisdiction to grant the injunctive relief sought by plaintiff, it is clear that plaintiff would not be entitled to that relief. In *Sampson*, the Supreme Court held that absent the most extraordinary circumstances, a federal employee cannot "make a showing of irreparable injury sufficient in kind to override [the] factors cutting against the general availability of preliminary injunctions in Government personnel cases." 415 U.S. at 95, 94 S.Ct. at 955. Among the "factors" referred to by the Court are the disruptive effect of a stay or injunction on the administrative process and the "well established" rule that the government has wide latitude "in the dispatch of its own internal affairs." 415 U.S. at 94, 94 S.Ct. at 954. The Court also held in *Sampson* that federal employees seeking preliminary relief must meet more than "the traditional standards" set forth in *Virginia Petroleum Jobbers Ass'n v. FPC*, 259 F.2d 921 (D.C.Cir.1978). Thus, the standards set forth in *Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189 (4th Cir. 1977), are not applicable here.

■ 7. Plaintiff's only allegation of irreparable injury is that the accomplishment of his transfer will deprive him "of the service of the attorney that he has retained" to defend against the downgrading action. Complaint at para. 11. This alleged injury does not rise to the level of injury required by *Sampson*. While plain-

tiff may be desirous of continuing his relationship with his present attorney, the need to change counsel in defending an administrative disciplinary action is hardly irreparable injury. Plaintiff also alleges in his Memorandum of Law in Support of Request for Preliminary Injunction, at para. 14, that the witnesses who will testify for plaintiff at the MSPB hearing live in North Carolina and, thus, he will be prejudiced by the holding of the hearing elsewhere. To the extent those witnesses are federal employees and they are allowed as witnesses by the MSPB, NIS will be responsible for making them available at the MSPB hearing. 5 C.F.R. § 1201.33. Thus, the prejudice to plaintiff resulting from the holding of the hearing on his downgrading in the State of Washington will be minimal.

8. Accordingly, if the Court has jurisdiction to hear plaintiff's request for injunctive relief, that claim is denied for failure to state a claim upon which relief can be granted. This is in keeping with the weight of authority holding that the courts should not interfere with the reassignment of federal employees. *Bullard v. Webster*, 623 F.2d 1042 (5th Cir. 1980); *Leefer v. Administrator, NASA*, 543 F.2d 209 (D.C. Cir.1976); *Coyne v. Boyett*, 490 F.Supp. 292 (S.D.N.Y.1980).

On the basis of the foregoing it is hereby

ORDERED that defendant's motion to dismiss this action pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, for lack of subject matter jurisdiction, be and hereby is GRANTED; and it is further

ORDERED that defendant's motions to quash and to strike are denied as moot; and it is further

ORDERED that the Complaint in this action be and hereby is DISMISSED.